IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Civ. A. No. 05-10255-MEL |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MARATHON INVESTMENT PARTNERS, LP, ) | |
| ) | |
| Defendant ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES AND FOR
ENTRY OF JUDGMENT ON THE PLEADINGS**

INTRODUCTION

This is the government's second attempt to short-circuit this litigation. Previously, the government moved for entry of a permanent injunction and a receivership—final remedies only appropriate after judgment—without even waiting for the defendant ("MIP") to answer the complaint. Now the government seeks judgment on the pleadings in the hopes of avoiding discovery and further proceedings.

As the government points out, there is no dispute that MIP is in a state of capital impairment, as that term is defined by the applicable regulations. However, as demonstrated below, MIP has asserted two affirmative defenses, either of which, if ultimately proved, will be sufficient to prevent the government from obtaining the harsh remedies it seeks. Neither defense may properly be stricken, and as a result, the government's motion for judgment on the pleadings must be denied.

## ARGUMENT

A.  The Government Improperly Cites Evidence Outside of The Pleadings

On a motion to strike under Rule 12(f), it is improper to consider evidence outside the pleadings, just as it is on a motion to dismiss under Rule 12(b)(6). See, e.g., Peterson v. Baloun, 715 F.Supp. 212, 214 (N.D. Ill. 1989). In this memorandum, MIP rebuts the government's arguments insofar as they rely on evidence outside of the pleadings. However, MIP has made no effort to produce additional evidence that would support its claims, some of which it anticipates it will obtain only through discovery. MIP does not consent to the treatment of the instant motion to strike as a motion for summary judgment.

B.  The Laches Defense Should Not Be Striken.

Rule 12(f) provides that upon motion, "the court may order stricken from any pleading any insufficient defense." The motion is "narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." Boreri v. Fiat S.p.A., 763 F.2d 17, 23 (1st Cir. 1985).

The government's argument, in a nutshell, is that "the United States is not subject to the defense of laches when enforcing its rights." (Mem. at 3). This overstates the case. Traditionally, of course, defendants could not plead laches against the sovereign. But as the First Circuit has recognized, the traditional rule is not an "absolute bar where unreasonable agency delay has caused hardship." Precious Metals Assocs., Inc. v. Commodity Futures Trading Comm'n, 620 F.2d 900, 909 (1st Cir. 1980). So it is not enough for the government merely to point to the (somewhat outmoded) rule. Rather, the government must turn to the evidence to make its case, as it does in its memorandum (Mem. at 6-7). This is the first reason why its motion to strike must be denied. It is improper to grant a Rule 12(f) motion where "there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible to

determine the issue by drawing inferences from acts and statements that are not disputed." 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1381 at n.38 (3d ed. 2004).

Even if the government's review of the evidence were proper on a motion directed at the sufficiency of the pleadings, the government's argument would fail. In essence, the government relies on a characterization of the evidence. It asserts that its repeated delays were really for the benefit of Marathon, arguing, e.g., that "The exhibits attached to the Lee Declaration only exemplify the continuing efforts made by SBA over a four-year period to keep the defendant operational." (Mem. at 7). Perhaps this is a permissible characterization of the evidence, but it is hardly the only one. Marathon's equally acceptable characterization of the evidence, as set out in it memorandum in opposition to the government's premature motion for appointment of a permanent receiver and permanent injunctive relief, is that the SBA strung Marathon along and then abruptly and prejudicially changed course. The decision which characterization to accept belongs to the finder of fact, not to the Court as a question of law on a motion on the pleadings. See Verges v. News Syndicate Co., 11 F.R.D. 587, 589 (S.D.N.Y. 1951) ("if the insufficiency of a defense is based upon facts, their interpretation and application, or upon inferences to be drawn therefrom, such inferences are for the triers of the fact").

C.  Laches Is Not Merely A Defense, But An Attack On The Government's Case In Chief.

The government's brief ignores one of Marathon's central arguments in its opposition to the motion for permanent relief. Since the Court is being asked to act in equity, it must weigh the relative equities of the parties' positions. Even leaving aside the applicability of laches as an affirmative defense, the government's inequitable delay robs its claim of equity. In other words, the government is not entitled to equitable relief on account of its delay regardless whether Marathon pleads laches as an equitable defense.

3

The First Circuit explained this point in <u>Texaco Puerto Rico, Inc. v. Department of Consumer Affairs</u>, 60 F.3d 867 (1st Cir. 1995), a case where, as here, the question was whether the sovereign's laches barred a claim:

> An equitable defense and an equitable factor are conceptually and practically distinct. The divagation is subtle, but significant. An equitable defense "bars the cause of action entirely, or bars … the equitable remedy." 1 Dan B. Dobbs, <u>Law of Remedies</u> § 2.4(1), at 91 (2d ed. 1993). Moreover, in evaluating an equitable defense, the court considers only the plaintiff's conduct and is free to "deny all remedies if the plaintiff does not meet equity's standards." <u>Id.</u> § 2.4(5), at 108-09. In contrast, an equitable factor must always be weighed in concert with other relevant factors. <u>See</u> <u>id.</u> at 109. Moreover, as part of balancing the equities, the court "looks at the conduct of both parties and the potential hardships that might result from a judicial decision either way." <u>Id.</u> From a practical standpoint, then, "even when an equitable defense does not bar the claim, the total balance of equities and hardships might do so." <u>Id.</u>, § 2.4(1), at 91.

<u>Id.</u> at 878.

Thus even if the Court granted the government's motion to strike the defense of laches, the government will not ipso facto be entitled to any equitable relief. The Court can hardly weigh all of the equities of the case on the pleadings. <u>Cf.</u> <u>Pro-Football, Inc. v. Harjo</u>, 57 U.S.P.Q.2d (BNA) 1140 (D.D.C. 2000) (Court refused to grant judgment on the pleadings on a laches defense because application of doctrine of laches was "dependent upon the equities of the factual scenarios within which it is raised").

D.     <u>The Breach Of Contract Defense Should Not Be Stricken.</u>

The government's argument on this point rests on faulty logic. The government assumes <u>arguendo</u> that the June 2002 letter "created a legally binding contract" and goes on to argue that a letter from the SBA dated nearly two years later somehow overrides the terms of the June 2002 contract. (Mem. at 8-9). Of course, a binding contract existed in June 2002, the SBA could not, by unilateral action, modify or abrogate its terms.

The government also relies heavily on <u>United States v. Cape Fear Capital Corp.</u>, 286 F.Supp. 135 (M.D. Pa. 1968). <u>Cape Fear</u> is not in point, because there the defendant did not

4

allege a <u>contract</u> with the SBA; instead, the defendant relied on the equitable defense of estoppel, which Marathon does not assert here. A contract will be enforced, whether or not a party's conduct is so inequitable as to warrant estoppel.

The government's final principal argument is that the June 2002 letter cannot be understood to prevent the SBA from seeking appointment of a receiver for failure to cure a condition of capital impairment. On the face of the letter, the SBA's argument fails. The letter,[1] agreed when MIP was already in a state of capital impairment provides:

> From our discussions, it seems as if the Licensee [MIP] has a viable plan for repaying the SBA's Debenture Leverage. Accordingly, the SBA has laid out the following terms and conditions under which it will allow Marathon's existing management team to continue to operate the Licensee.
>
> 1. Marathon should operate the Licensee in a manner that will result in the timely liquidation of its remaining portfolio holdings. It should not engage in new investments and make only follow-on investments with the prior approval of the SBA.
>
> 2. It is prudent for the Licensee to reduce its overhead and pare its management and advisory fee. As discussed, we expect the Licensee to cut its management and advisory fee to $500,000 per annum for the remainder of FY '02 and FY '03. Should circumstances not improve materially, additional reductions may be necessary thereafter.
>
> 3. The full recovery of the Licensee's $3.4 million investment in Lids, Inc. will go a long way to improving Marathon's cash position and reducing its Capital Impairment Ratio. If the Licensee realizes any settlement related to the Lids lawsuit, the entire proceeds will be directed to pay off the Licensee's existing SBA Debentures.

It is readily apparent, contrary to the government's arguments, that the precise purpose of the letter was to set out terms under which MIP's managers, rather than a receiver, would be entitled to remain in control of MIP. The government does not argue that MIP violated any of the three conditions set out in the letter. The government's position is thus without merit. To the extent there is some ambiguity in the letter agreement, the government must wait for a hearing on the facts rather than seek judgment on the pleadings.

---

[1] The letter was submitted as Exhibit 5 to the Declaration of Thomas Lee, filed with MIP's opposition to the motion for permanent injunctive relief and appointment of a receiver.

5

E.   The Government Is Not Entitled To Judgment On The Pleadings

Because the government has failed to show that MIP's affirmative defenses must be stricken, it is not entitled to judgment on the pleadings, since MIP might ultimately succeed on its defenses. Even if both defenses were stricken, the government still would not be entitled to judgment at this early stage of the case, since the government's inequitable delay is not merely an affirmative defense, but a matter that goes to the government's ability to prevail on its claim for equitable relief. See Texaco Puerto Rico, Inc. v. Department of Consumer Affairs, supra.

## CONCLUSION

For the foregoing reasons, the government's motion to strike and for judgment on the pleadings should be denied.

Respectfully submitted,

MARATHON INVESTMENT
PARTNERS, L.P.,

By its attorneys:

/s/ Theodore J. Folkman
Charles R. Bennett, Jr.  (BBO No. 037380)
Theodore J. Folkman (BBO No. 647642)
HANIFY & KING, P.C.
One Beacon Street
Boston, Mass. 02108
(617) 423-0400

Dated: April 14, 2005
427649